Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| HOSPITAL COMUNITARIO BUEN SAMARITANO, INC.<br><br>Recurrido<br><br>v.<br><br>DEPARTAMENTO DE SALUD, SECRETARÍA AUXILIAR PARA REGLAMENTACIÓN Y ACREDITACIÓN DE FACILIDADES DE SALUD<br><br>Recurrido<br><br>INTEGRATE COMMUNITY HEALTH SYSTEM, INC.<br><br>Parte Indispensable / Recurrida<br><br>********************************<br>AGUADILLA MEDICAL SERVICES, INC.<br><br>**Recurrente**<br><br>v.<br><br>DEPARTAMENTO DE SALUD, SECRETARÍA AUXILIAR PARA REGLAMENTACIÓN Y ACREDITACIÓN DE FACILIDADES DE SALUD<br><br>Recurrido<br><br>INTEGRATE COMMUNITY HEALTH SYSTEM, INC.<br><br>Parte Indispensable / Recurrida | TA2026AP00357<br><br>Consolidado con | Apelación acogida como REVISIÓN JUDICIAL Procedente del Departamento de Salud, División de Vistas Administrativas<br><br>Querella Núm.: 22-08-016 (VLT)<br><br>Sobre: Querella contra la Resolución del Secretario emitida en la Propuesta 21-04-007 para establecer un Centro de Diagnóstico y Tratamiento en Bo. Camaseyes, Aguadilla, PR<br>*************************<br><br><br><br>Querella Núm.: 22-08-017 (VLT)<br><br>Sobre: Querella contra la Resolución del Secretario emitida en la Propuesta 21-04-007 para establecer un Centro de Diagnóstico y Tratamiento en Bo. Camaseyes, Aguadilla, PR |
| HOSPITAL COMUNITARIO BUEN SAMARITANO, INC.<br><br>**Recurrente**<br><br>v.<br><br>DEPARTAMENTO DE SALUD, SECRETARÍA AUXILIAR PARA | TA2026AP00358 | Apelación acogida como REVISIÓN JUDICIAL Procedente del Departamento de Salud, División de Vistas Administrativas<br><br>Querella Núm.: |

| | |
|---|---|
| REGLAMENTACIÓN Y ACREDITACIÓN DE FACILIDADES DE SALUD<br><br>Recurrido<br><br><br>INTEGRATE COMMUNITY HEALTH SYSTEM, INC.<br><br>Parte Indispensable / Recurrida<br><br>*******************************<br>AGUADILLA MEDICAL SERVICES, INC.<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE SALUD, SECRETARÍA AUXILIAR PARA REGLAMENTACIÓN Y ACREDITACIÓN DE FACILIDADES DE SALUD<br><br>Recurrido<br><br>INTEGRATE COMMUNITY HEALTH SYSTEM, INC.<br><br>Parte Indispensable / Recurrida | 22-08-016 (VLT)<br><br>Sobre:<br>Querella contra la Resolución del Secretario emitida en la Propuesta 21-04-007 para establecer un Centro de Diagnóstico y Tratamiento en Bo. Camaseyes, Aguadilla, PR<br><br>************************<br><br><br><br><br><br>Querella Núm.:<br>22-08-017 (VLT)<br><br>Sobre:<br>Querella contra la Resolución del Secretario emitida en la Propuesta 21-04-007 para establecer un Centro de Diagnóstico y Tratamiento en Bo. Camaseyes, Aguadilla, PR |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza ponente

### SENTENCIA

En San Juan, Puerto Rico, a 10 de junio de 2026.

El 8 de abril de 2026, Aguadilla Medical Services, Inc. (Aguadilla Medical o parte recurrente) presentó ante este Tribunal de Apelaciones el recurso de *Revisión Judicial* número **TA2026AP00357** y nos solicitó la revocación de la *Resolución* emitida y notificada el 2 y 5 de febrero de 2026, respectivamente, por el Secretario de Salud, Dr. Víctor M. Ramos Otero. Mediante el aludido dictamen, se acogió la recomendación del Oficial Examinador y en su consecuencia, se desestimaron las querellas

consolidadas Q-22-08-016 y Q-22-08-017 (Querellas), presentadas contra el Departamento de Salud, por incumplimientos con las órdenes sobre el Informe requerido por el Examinador.

En el mismo día, el Hospital Comunitario Buen Samaritano, Inc. (Hospital Samaritano o parte recurrente) presentó ante nos, el *Recurso de Revisión Administrativa* número **TA2026AP00358**. Allí, nos solicitó la revisión del referido dictamen.

El 14 de abril de 2026, por estar estrechamente relacionados y en aras de la economía procesal, ordenamos la consolidación de los recursos de epígrafe. Así pues, con el beneficio de la postura de todas las partes en ambos recursos y evaluados los expedientes judiciales consolidados, por las razones que más adelante explicamos, **revocamos** el dictamen recurrido en los recursos **TA2026AP00357** y **TA2026AP00358.**

-I-

El pleito de epígrafe tuvo su génesis el 29 de agosto de 2022, cuando Aguadilla Medical y el Hospital Samaritano (en conjunto, parte recurrente) presentaron sendas Querellas contra el Departamento de Salud, Secretaría Auxiliar de Reglamentación y Acreditación de Facilidades de Salud (SARAFS).[1] Allí, impugnaron la otorgación del Certificado de Necesidad y Conveniencia (CNC) a la parte indispensable Integrate Community Health System, Inc. (Integrate). En virtud del referido CNC, se autorizó que Integrate estableciera un Centro de Diagnóstico y Tratamiento en el Barrio Camaseyes de Aguadilla, Puerto Rico (CDT).

En síntesis, arguyeron que el CNC que se impugna,[2] el cual establece la nueva facilidad de salud, no cumplió con los criterios reglamentarios de población de un CDT por cada 25,000 habitantes, conforme a la Ley Núm.

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) TA, Entrada Núm. 1, Apéndice 1, pág. 1-15, TA2026AP00357. Véase, además, *Íd.*, Apéndice 1, TA2026AP00358. Cabe señalar, Ramey Medical Group también presentó una *Querella* por los mismos hechos junto a los recurrentes, de la cual eventualmente desistió.

[2] El referido CNC se otorgó en la Propuesta Núm. 21-04-007 por el Secretario de Salud, mediante *Resolución* del 26 de julio de 2022.

2 de 7 de noviembre de 1975, Ley de Certificado de Necesidad y Conveniencia y al Reglamento Núm. 9084, entre otras alegaciones. De modo que, solicitaron se ordenase la celebración de vista adjudicativa, se permitiese el descubrimiento de prueba y se dejase sin efecto el CNC que se le otorgó a Integrate.

Tras múltiples incidencias procesales, no pertinentes para adjudicar la controversia de autos, surge de la *Orden* emitida por el Oficial Examinador, el 11 de julio de 2024, que en la videoconferencia celebrada el 11 de junio del mismo año, se calendarizó la conferencia con antelación a vista en su fondo para el 28 de agosto de 2024. Además, se requirió "que se cumpla con la Regla 21 del Reglamento 9321[3] para el Informe correspondiente, donde se discuta sobre la naturaleza de la vista adjudicativa".[4]

Por otro lado, el 8 de agosto de 2024, Integrate presentó *Solicitud de Conversión de Vista*.[5] De tal moción surge que, el Oficial Examinador ordenó a las partes radicar el informe cinco días antes de la conferencia con antelación a vista. De esta forma, Integrate argumentó que en el caso no había necesidad de celebrar una vista siendo las controversias unas de derecho. Añadió, que en los casos sobre impugnación de la determinación de otorgamiento de un CNC, solo es admisible la evidencia documental o testifical que estuviera disponible a la fecha de la vista pública. Por lo cual, solicitó que el informe de conferencia fuese sustituido por un Memorando de Derecho.

Así las cosas, y tras varias instancias procesales, el 26 de agosto de 2024, el Oficial Examinador emitió una *Orden* en la que apercibió a los querellantes, a que debían comparecer a la conferencia con antelación a

---

[3] Reglamento de Procedimientos Adjudicativos y de Reglamentación en el Departamento de Salud, Núm. 9321 del 29 de octubre de 2021.
[4] SUMAC TA, Entrada Núm. 1, Apéndice 21, TA2026AP00357.
[5] *Íd.*, Apéndice 23.

vista en su fondo pautada para el 28 de agosto de 2024, "preparados para acreditar las gestiones realizadas para la preparación del Informe".[6] De lo contrario, debían expresar si tenían interés en proseguir con las Querellas. Por último, se ordenó la notificación a cada querellante individualmente, aparte de su abogado.

Del expediente ante nos surge, que el 30 de agosto de 2024, el Oficial Examinador emitió otra *Orden* en la cual consignó que, en la conferencia con antelación a vista, los querellantes manifestaron su deseo de continuar los procedimientos, a pesar de no presentar el Informe requerido.[7] Puntualizamos, allí el Oficial Examinador reiteró las órdenes previas, señaló vista en su fondo para el 24 de octubre de 2024, y estableció que "[e]l Informe requerido deberá radicarse el 14 de octubre de 2024 o el próximo día laborable, de ser feriado". También, se declaró la siguiente advertencia: "[A] la luz de la muy reciente notificación directa a las partes querellantes, aparte de sus abogados, para que acreditaran su interés en continuar con sus querellas, se les notificará esta Orden nuevamente a dichas partes individualmente advertidas que podrían desestimarse por un futuro incumplimiento".

En lo pertinente, tras una moción de transferencia de vista, el 16 de octubre de 2024, el Oficial Examinador emitió una *Orden* en la cual declaró No ha lugar al reseñalamiento de la vista en su fondo, y destacó que no se había recibido el informe requerido por la Regla 21, y ninguna parte había comparecido a expresarse.[8] Nótese, el Oficial Examinador otorgó un término final de cinco (5) días para presentar el informe o, de lo contrario, procedería a recomendar al Secretario la desestimación de las Querellas.

Por su parte, el 18 de octubre de 2024, el Hospital Samaritano presentó *Moción Solicitando Orden o Remedios sobre el Descubrimiento de*

---

[6] *Íd.*, Apéndice 27.
[7] *Íd.*, Apéndice 28.
[8] *Íd.*, Apéndice 30.

*Prueba*, mediante la cual detalló una serie de problemas con relación a un interrogatorio cursado, para el cual no había recibido contestación.[9]

Consecuentemente, el 22 de octubre de 2024, el Oficial Examinador emitió una *Orden* en la que declaró No ha lugar la solicitud de remedios antes reseñada.[10] A su vez, <u>dejó sin efecto el señalamiento del 24 de octubre de 2024, "por los reiterados incumplimientos con las órdenes sobre el Informe requerido", e indicó que recomendaría al Secretario la desestimación de las Querellas</u>.

Inconformes, el 10 y 11 de noviembre de 2024, los recurrentes presentaron sus respectivas mociones de reconsideración.[11] En síntesis, argumentaron que la orden emitida en la que se recomienda la desestimación fue dictada prematuramente antes de que venciera el término de cinco (5) días para someter el informe. Es decir, se afirmó que conforme a la Regla 68.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R.68.1, el cómputo del término concedido debía excluir los sábados y domingos. Por otra parte, se planteó que la agencia no cumplió con el procedimiento establecido en la Regla 28 del Reglamento 9321, previo a recomendar la desestimación, lo cual garantiza que los querellantes tengan acceso a su día en corte.

Ante ese cuadro, el 13 de noviembre de 2024, el Oficial Examinador emitió *Orden* en la cual concedió un término de diez (10) días a Integrate y SARAFS para que se expresaran sobre el cómputo del término de cinco (5) días a la luz de la Regla 68.1 de Procedimiento Civil, *supra*, y la jurisprudencia aplicable.[12] De lo contrario, se entendería que las partes se allanan a que no se recomiende al Secretario la desestimación de las Querellas. Además, se consignó que "[a]l día de hoy no hay Informe

---

[9] *Íd*., Apéndice 8, TA2026AP00358.
[10] *Íd*., Apéndice 31, TA2026AP00357.
[11] *Íd*., Apéndice 32, TA2026AP00357. Véase, además, *Íd*., Apéndice 10, TA2026AP00358.
[12] *Íd*., Apéndice 33, TA2026AP00357; *Íd*., Apéndice 11, TA2026AP00358.

radicado, más de veinte (20) días después del 23 de octubre de 2024, suponiendo que esa fuera la fecha".

Pasado el término, el 6 de diciembre de 2024, Integrate presentó *Moción en Cumplimiento de Orden*, en la cual sostuvo que las solicitudes de reconsideración son prematuras en vista de que no existe una resolución u orden del Secretario.[13] Por lo cual, solicitó se consideren tales solicitudes como los escritos provistos por la Regla 28 del Reglamento 9321, en la cual exponen los motivos por los cuales no se deba desestimar las Querellas.

Posteriormente, el 10 de julio de 2025, los recurrentes instaron una *Moción Reiterando "Moción de Reconsideración de Orden Emitida el 22 de octubre de 2024".*[14] Allí, señalaron que Integrate incumplió con lo ordenado, por lo que se debía entender, se allanó a que no se recomiende al Secretario la desestimación de las querellas. Por lo cual, solicitaron al TPI se diera seguimiento a los trámites del caso, y se señalase una vista de antelación y vista en su fondo.

Atendida la postura de las partes, el 16 de enero de 2026, el Oficial Examinador emitió *Resolución* en la cual recomendó la desestimación de las Querellas consolidadas "por su incumplimiento con varias órdenes, por falta de interés o inactividad, todo ello debidamente advertidas tanto sus abogados como las partes directamente".[15]  Consecuentemente, el 2 de febrero de 2026, el Secretario emitió *Resolución* acogiendo la recomendación del Oficial Examinador.[16] Así pues, se desestimaron las Querellas presentadas.

Inconforme, el 24 y 25 de febrero de 2026, el Hospital Samaritano y Aguadilla Medical, respectivamente, presentaron una *Moción de Reconsideración de Resolución*.[17] En síntesis, arguyeron que el Oficial

---

[13] *Íd.*, Apéndice 34, TA2026AP00357; *Íd.*, Apéndice 12, TA2026AP00358.
[14] *Íd.*, Apéndice 35, TA2026AP00357; *Íd.*, Apéndice 13, TA2026AP00358.
[15] *Íd.*, Apéndice 36, TA2026AP00357; *Íd.*, Apéndice 3, TA2026AP00358.
[16] *Íd.* Notificada el día 5 de febrero de 2026.
[17] *Íd.*, Apéndice 37, TA2026AP00357; *Íd.*, Apéndice 14, TA2026AP00358.

Examinador abusó de discreción al recomendar la desestimación antes del vencimiento del término otorgado, y se reiteró que la desestimación constituyó una sanción demasiado excesiva y a destiempo. Además, se indicó que la actuación fue contraria a su propio Reglamento 9321, el cual establece un procedimiento a seguir para recomendar la desestimación por incumplimiento. El 6 de marzo de 2026, mediante *Resolución*, se dispuso No Ha Lugar a las mociones de reconsideración presentadas por los recurrentes.[18]

En desacuerdo aun, el 8 de abril de 2026, los recurrentes comparecieron ante nos, mediante sus respectivos escritos de revisión judicial. En el recurso número **TA2026AP00357**, Aguadilla Medical señaló la comisión de los siguientes errores:

> PRIMERO: ERRÓ SARSP PORQUE EL OFICIAL EXAMINADOR ACTUÓ *ULTRA VIRES* AL RECOMENDAR LA SANCIÓN MÁS DRÁSTICA DISPONIBLE —LA DESESTIMACIÓN— SIN ANTES HABER CUMPLIDO CON EL PROCEDIMIENTO MANDATORIO ESTABLECIDO EN LAS REGLAS 28 (2) Y 39 DEL REGLAMENTO 9321, EL CUAL REQUIERE QUE EL OFICIAL EXAMINADOR IMPONGA SANCIONES PROGRESIVAS Y EMITA UNA ORDEN DE MOSTRAR CAUSA ANTES DE RECOMENDAR LA DESESTIMACIÓN.
>
> SEGUNDO: ERRÓ SARSP PORQUE EL OFICIAL EXAMINADOR APLICÓ ARBITRARIAMENTE EL REGLAMENTO 9321 Y ABUSÓ DE SU DISCRECIÓN AL RECOMENDAR LA DESESTIMACIÓN DE LA QUERELLA COMO SANCIÓN A LAS PARTES BASÁNDOSE EN UN ASUNTO DE DERECHO SOBRE EL CÓMPUTO DE UN TÉRMINO DE CINCO (5) DÍAS QUE CONCEDIÓ Y NO POR INACCIÓN O INCUMPLIMIENTO POR PARTE DE LA RECURRIDA.

Por su parte, en el recurso número **TA2026AP00358**, Hospital Samaritano señaló la comisión de los siguientes errores:

> PRIMERO: ERRÓ EL SECRETARIO DE SALUD AL CONFIRMAR LA DESESTIMACIÓN DE LA QUERELLA ADMINISTRATIVA CUANDO LA MISMA FUE EMITIDA ANTES DEL VENCIMIENTO DEL TÉRMINO CONCEDIDO PARA CUMPLIR CON LA ORDEN ADMINISTRATIVA, CONSTITUYENDO UN ERROR DE DERECHO.
>
> SEGUNDO: ERRÓ LA AGENCIA AL IMPONER LA SANCIÓN EXTREMA DE DESESTIMACIÓN SIN CUMPLIR CON EL PROCEDIMIENTO MANDATORIO ESTABLECIDO EN LA

---

[18] *Íd.*, Apéndice 38, TA2026AP00357; *Íd.*, Apéndice 2, TA2026AP00358. Notificada el día 9 de marzo de 2026.

REGLA 28 DEL REGLAMENTO 9321, VIOLANDO EL DEBIDO PROCESO DE LEY.

TERCERO: ERRÓ LA AGENCIA AL CONFIRMAR UNA DETERMINACIÓN ADMINISTRATIVA ARBITRARIA, IRRAZONABLE Y CAPRICHOSA, CONSTITUYENDO ABUSO DE DISCRECIÓN.

CUARTO: ERRÓ LA AGENCIA AL VALIDAR UNA DESESTIMACIÓN BASADA EN SUPUESTOS INCUMPLIMIENTOS PROCESALES CUANDO EL EXPEDIENTE ADMINISTRATIVO DEMUESTRA QUE LAS PARTES PETICIONARIAS PARTICIPARON ACTIVAMENTE EN EL PROCEDIMIENTO Y EJERCIERON DILIGENTEMENTE SUS DERECHOS PROCESALES.

-II-

*A.*

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq.* A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA Sec. 9671. Sobre el alcance de esta revisión, la Sección 4.5 de la LPAU establece que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente, mientras que las conclusiones de derecho serán revisables en todos sus aspectos.[19]

En nuestro ordenamiento jurídico ha sido la norma general por años que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. Ahora bien, recientemente nuestro Tribunal Supremo, en consideración del lenguaje específico de la Sección 4.5 de la LPAU, adoptó la normativa establecida en *Loper Bright Enterprises*

---

[19] 3 LPRA Sec. 9675.

*v. Raimondo*, 603 US 369 (2024). Así pues, concluyó que la interpretación de las leyes es una tarea inherente de los tribunales. En virtud de ello, enunció que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos y no guiarse por la deferencia automática que se aplica a estas decisiones. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR _____.

En el citado caso el Tribunal Supremo de Puerto Rico expresó que:

[A]l ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. . . . Sin embargo, tales interpretaciones constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Íd.* (cita depurada).

En ese sentido, nuestro más alto foro enfatizó que "[…] los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua." (énfasis en el original).

No obstante, es importante destacar que en el citado caso nuestro más alto foro no modificó la evaluación y respetó las determinaciones de hechos alcanzadas por las agencias. Así pues, prevalece todavía la norma de que, para impugnar la razonabilidad de la determinación administrativa, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de la evidencia que obra en el expediente administrativo. *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999) (citando a *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953)). La misma debe ser suficiente como para que pueda descartarse en derecho la presunción de corrección de la determinación administrativa, no pudiendo descansar en meras alegaciones. *Com. Vec. Pro-Mej., Inc. v. JP*, 147

DPR 750, 761 (1999). El criterio rector para examinar una decisión administrativa es la razonabilidad de la actuación de la agencia recurrida. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013).

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012) (citando a *Empresas Ferrer v. A.R.PE.*, 172 DPR 254, 264 (2007).

*B.*

El estatuto orgánico o la ley habilitadora de una agencia es el mecanismo legal que le delega los poderes y facultades necesarios para actuar en conformidad con el propósito legislativo. *Oficina de la Procuradora de las Mujeres v. Corteva Agriscience Puerto Rico, Inc.*, 2025 TSPR 146, 217 DPR ____, al citar a *Vázquez et al. v. DACo,* 2025 TSPR 56, y *D.A.Co v. Fcia. San Martín*, 175 DPR 198, 203 (2009). Así pues, la agencia solo tiene jurisdicción para realizar las funciones que le han sido encomendadas legislativamente y aquellas que surjan o sean indispensables para llevar a cabo su actividad o encomienda principal. *Íd.*, al mencionar a *Justicia et al. v. Jiménez et al.*, 199 DPR 293, 309 (2017) y otro.

Cónsono con lo anterior, el Tribunal Supremo le ha reconocido mucha discreción a las agencias en la selección de las medidas que les ayuden a cumplir los objetivos de las leyes cuya administración e implantación se les ha delegado, siempre y cuando actúen dentro del marco de su conocimiento especializado y de la ley. *Íd.*, al citar a *Comisionado de Seguros v. PRIA*, 168 DPR 659, 667 (2006).

En tales casos, la revisión judicial no será para determinar si la sanción guarda proporción con la conducta por la cual se impone o si es demasiado fuerte. Más bien, tal evaluación corresponde hacerla a la propia agencia, que por su experiencia especializada es quien está en la mejor posición para conocer los efectos de una violación a los intereses protegidos y cuya agencia, al mismo tiempo, asegura cierto grado de uniformidad y coherencia en la imposición de sanciones. *O.E.G. v. Román,* 159 DPR 401, 417 (2003); *E.L.A. v. Frig. Y Alm. del Turabo, Inc.*, 155 DPR 27 (2001); *Com. Seg. P.R. v. Antilles Ins. Co.*, 145 DPR 226 (1998). No obstante, los tribunales tienen la obligación de velar por que la sanción no exceda lo permitido por ley y no constituya un claro abuso de discreción. *Comisionado v. Prime Life* 162 DPR 334, 342 (2004).

Por otro lado, siempre que la sanción administrativa esté fundamentada en evidencia sustancial, no constituya una actuación *ultra vires* y tenga una relación razonable con los actos que se quieren prohibir, los tribunales le brindarán gran deferencia. *Comisionado v. Prime Life, supra,* pág. 341.

En lo pertinente, la Sección 3.21 de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 9661, faculta a las agencias administrativas a imponer sanciones, a saber:

> La agencia podrá imponer sanciones, en su función cuasijudicial, en los siguientes casos:
>
> (a) **Si el promovente de una acción, o el promovido por ella, dejare de cumplir con las reglas y reglamentos o con cualquier orden del jefe de la agencia, del juez administrativo o del oficial examinador, la agencia a iniciativa propia o a instancia de parte podrá ordenarle que muestre causa por la cual no deba imponérsele una sanción**. La orden informará de las reglas, reglamentos u órdenes con las cuales no se haya cumplido, y se concederá un término de veinte (20) días, contados a partir de la fecha de notificación de la orden, para la mostración de causa. De no cumplirse con esa orden, o de determinarse que no hubo causa que justificare el incumplimiento, entonces se podrá imponer una sanción económica a favor de la agencia o de cualquier parte, que no excederá de doscientos (200) dólares por cada imposición

separada, a la parte o a su abogado, si este último es el responsable del incumplimiento.

(b) **Ordenar la desestimación de la acción** en el caso del promovente, o eliminar las alegaciones en el caso del promovido, si después de haber impuesto sanciones económicas y de haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la agencia.

(c) **Imponer costas y honorarios de abogados, en los mismos casos que dispone la Regla 44 de Procedimiento Civil, según enmendada, Apéndice III del Título 32.** (Énfasis suplido).

Por su parte, el *Reglamento de Procedimientos Adjudicativos y de Reglamentación en el Departamento de Salud* de 29 de octubre de 2021 (Reglamento 9321), fue aprobado en virtud de la Ley Núm. 81 de 14 de marzo de 1912, conocida como la Ley Orgánica del Departamento de Salud, 3 LPRA sec. 171 *et seq.* Su propósito es uniformar los procedimientos adjudicativos y de reglamentación, así como proveer una solución justa, rápida y económica en los procedimientos administrativos en los que el Departamento de Salud tiene jurisdicción y competencia.

La Regla 21 del Reglamento 9321, s*upra*, la que regula lo concerniente a la Conferencia con Antelación a la Vista, entre otras cosas, permite que las partes puedan simplificar controversias y cualquier otro asunto que puede acelerar la disposición de los procedimientos. El objetivo de la vista de conferencia es promover la solución rápida, justa y económica de la controversia. Se dispone que, de entenderlo necesario, el Oficial Examinador podrá solicitar que las partes radiquen un Informe de Conferencia, con no menos de cinco (5) días con antelación a la fecha de la vista. Una vez aprobado el Informe de Conferencia, este regirá el curso ulterior de los procedimientos y obliga a las partes.

Por otro lado, en virtud del inciso 2 de la Regla 28 del Reglamento 9321, un Oficial Examinador está facultado a recomendar la desestimación de una querella a iniciativa propia o a solicitud de una parte querellada, "si

la parte querellante o promovente deja de cumplir con estas reglas o con cualquier orden del foro administrativo". Además, allí se dispone que:

> Cuando se trate de un primer incumplimiento, la desestimación de la querella o la eliminación de las alegaciones solo procederá después que el foro, haya apercibido al representante legal de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el foro procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación. El Oficial Examinador dictará una orden, la cual se notificará a las partes y su representante legal, requiriéndoles dentro del término de diez (10) días desde que les notifique, exponer por escrito las razones por las cuales no deba desestimarse y archivarse la querella. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el foro podrá ordenar la desestimación del pleito o la eliminación de las alegaciones.

Del mismo modo, en su inciso 3 la mencionada regla establece que un Oficial Examinador podrá recomendar la desestimación y el archivo de los asuntos pendientes de los cuales o se haya efectuado trámite alguno por cualquiera de las partes durante un término de seis (6) meses, salvo que sea justificada oportunamente. Adviértase que, las mociones de suspensión, transferencias de vista o prórrogas no son consideradas como trámite para los fines de esta regla.

A su vez, en la Regla 39 del Reglamento 9321 se contemplan las sanciones que el foro adjudicativo tiene a su alcance, esto es:

1. Orden de mostrar causa
   a. Cuando una Parte dejare de cumplir con un procedimiento establecido en este Reglamento, o una orden del Secretario o del Oficial Examinador, éste podrá a motu proprio o a instancia de parte, ordenar que se muestre causa por la cual no deba imponérsele una sanción.
   b. La Orden informará las reglas, reglamentos u órdenes con las cuales no se haya cumplido.
   c. Se le concederá a la parte un término de diez (10) días, contados desde la notificación de la orden, para que muestre causa.

2. Sanción económica
   a. De no cumplirse con la orden de mostrar causa, o de determinarse que no hubo causa que justifique el incumplimiento, se procederá a imponer una sanción económica a favor del Departamento o de cualquier parte, que no excederá de doscientos (200) dólares por cada imposición separada a la parte o a su abogado, si este último es responsable del incumplimiento.

3. Desestimación de la acción del promovente o eliminación de alegaciones

Si la parte sancionada incumple con el pago de la sanción se podrá ordenar la desestimación de su querella, si es el querellante, o eliminar sus alegaciones si es el querellado.

4.  Imposición de costas y honorarios
    *a.* En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el Departamento impondrá en su Resolución, al responsable, el pago de una suma por concepto de honorarios de abogado que el Departamento entienda corresponda a tal conducta. En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el Departamento deberá imponerle en su Resolución una suma por concepto de honorarios de abogado, excepto en los casos en que este expresamente exento por ley del pago de honorarios de abogado. Regla 39 del Reglamento 9321, págs. 20-21.

Es meritorio establecer que, las partes tienen el deber de ser diligentes y proactivos al realizar los trámites procesales. *Sánchez Rodríguez v. Adm. de Corrección*, 177 DPR 714, 719 (2009). El Tribunal Supremo ha reiterado que el mecanismo procesal de la desestimación como sanción debe utilizarse como último recurso. *Román et als. v. Román et als.*, 158 DPR 163, 167 (2002). Es decir, "la desestimación como sanción es una medida sumamente drástica a la que sólo debe acudirse en casos extremos en los que no exista duda sobre la irresponsabilidad de la parte así sancionada. *SLG Sierra v. Rodríguez*, 163 DPR 738, 745-746 (2005).

C.

Las Reglas de Procedimiento Civil no aplican automáticamente a los procedimientos administrativos. *Cruz Padilla v. Dpto. Vivienda*, 184 DPR 393 (2012) al citar a *Otero v. Toyota*, 163 DPR 716 (2005). Tal cuerpo normativo procesal podrá utilizarse para guiar el curso de los procesos administrativos mientras no obstaculicen la flexibilidad, agilidad y sencillez de estos. Así pues, estas reglas podrán utilizarse como guía si propician una solución justa, rápida y económica de la controversia a resolverse. *Íd.*

Sobre la aplicación de las Reglas de Procedimiento Civil, la Regla 19 del Reglamento 9321 dispone que "no serán de aplicación a las vistas administrativas, pero los principios fundamentales se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento y en la

medida que el funcionario que preside la vista lo estime necesario para llevar a cabo los fines de la justicia".

En cuanto al cómputo de términos, la Regla 68.1 de las de Procedimiento Civil establece que:

> En el cómputo de cualquier término concedido por estas reglas, o por orden del tribunal o por cualquier estatuto aplicable, no se contará el día en que se realice el acto, evento o incumplimiento después del cual el término fijado empieza a transcurrir. El último día del término así computado se incluirá siempre que no sea sábado, domingo ni día de fiesta legal, extendiéndose entonces el plazo hasta el fin del próximo día que no sea sábado, domingo ni día legalmente feriado. También podrá suspenderse o extenderse cualquier término por causa justificada cuando el Tribunal Supremo de Puerto Rico lo decrete mediante resolución. Cuando el plazo concedido sea menor de siete (7) días, los sábados, domingos o días de fiesta legal intermedios se excluirán del cómputo. Medio día feriado se considerará como feriado en su totalidad. 32 LPRA Ap. V, R. 68.1.

Por último, en su Capitulo II, el propio Reglamento 9321, al definir Día indica que "se refiere a día calendario, a menos que se especifique lo contrario. Disponiéndose, que, si el último día cae sábado, domingo o día feriado, se correrá el término al próximo día laborable". Cabe recordar que, "las agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulgan, en aras de limitar su discreción, y no queda a su arbitrio reconocer o no los derechos allí contenidos". *Torres v. Junta de Ingenieros*, 161 DPR 696, 712 (2004); *Com. Vec. Pro-Mej., Inc. v. J.P.*, 147 DPR 750, 764 (1999).

-III-

En el caso ante nos, corresponde determinar si la agencia administrativa actuó *ultra vires* al desestimar las Querellas, dado el incumplimiento de la parte recurrente con las órdenes del Oficial Examinador. Por estar íntimamente relacionados, procedemos a discutir los señalamientos de error en conjunto. Veamos.

En sus señalamientos de error, en definitiva, los recurrentes nos plantean que, antes de recomendar la desestimación de las Querellas, el Oficial Examinador debió imponer sanciones progresivas y emitir una

orden de mostrar causa, conforme la Reglas 28 y 39 del Reglamento 9321 del Departamento de Salud, *supra*. Por otro lado, aducen que erró el Secretario de Salud al confirmar la desestimación cuando la misma fue emitida antes del vencimiento del término de cinco (5) días concedidos para cumplir con la orden administrativa de producir el Informe de Conferencia.

Por su parte, el Departamento de Salud sostiene que la determinación recurrida estuvo fundamentada en el incumplimiento con las órdenes emitidas, las cuales contenían advertencias claras y expresas sobre la consecuencia del incumplimiento, a saber, la recomendación al Secretario para la desestimación de las Querellas. En su escrito alega que, en el trámite de la controversia de epígrafe, se cumplió a cabalidad con el proceso mandatorio de apercibimiento conforme al Reglamento 9321, *supra*. A saber: se informó sobre el requerimiento del Informe de Conferencia, se otorgaron oportunidades adicionales, y se reiteraron las advertencias antes de recomendar la desestimación.

Según expusimos en el acápite -II- de este dictamen, los tribunales debemos brindar gran deferencia a la sanción administrativa siempre que esté fundamentada y tenga una relación razonable con los actos que se quieren prohibir. En esa dirección, es nuestra obligación velar por que la sanción no exceda lo permitido por ley y no constituya un claro abuso de discreción. *Comisionado v. Prime Life, supra*. Según la normativa arriba esbozada, la Sección 3.21 (b) de la LPAU, *supra*, establece que procede ordenar la desestimación de la acción en el caso del promovente, si después de haber impuesto sanciones económicas y haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la agencia.

Mientras tanto, cónsono con ello, la Regla 39 del Reglamento 9321, *supra*, faculta al Oficial Examinador ordenar que se muestre causa por la cual no deba imponérsele una sanción, cuando la parte dejare de cumplir

con el procedimiento establecido en el Reglamento, o con una orden del Oficial Examinador. De igual forma, la referida regla contempla la desestimación de la acción del promovente, cuando la parte sancionada incumple con el pago de la sanción. Por otro lado, la Regla 28 del citado Reglamento, faculta al Oficial Examinador el recomendar la desestimación si la parte querellante o promovente deja de cumplir con estas reglas o con cualquier orden del foro administrativo.

Para atender la controversia planteada ante nuestra consideración, debemos tener presente, que el Departamento de Salud basa su determinación en la antes citada Regla 28 del Reglamento 9321, *supra*. En particular, en que "[l]uego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el foro podrá ordenar la desestimación del pleito". No obstante, en su análisis la parte recurrida descartó el texto que le precede, esto es:

> Cuando se trate de un primer incumplimiento, la desestimación de la querella o la eliminación de las alegaciones solo procederá después que el foro, haya apercibido al representante legal de la situación y se le haya concedido la oportunidad para responder. <u>Si el abogado o abogada de la parte no responde a tal apercibimiento, el foro procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación.</u> El Oficial Examinador dictará una orden, la cual se notificará a las partes y su representante legal, requiriéndoles dentro del término de diez (10) días desde que les notifique, exponer por escrito las razones por las cuales no deba desestimarse y archivarse la querella. (Énfasis nuestro)

Surge del tracto procesal, que desde el 11 de julio de 2024, se requirió a las partes "cumplir con la Regla 21 del Reglamento 9321" para que así produjeran el Informe de Conferencia. Así, se ordenó proveer el Informe cinco días antes de la vista en su fondo pautada para el 28 de agosto de 2024. El día 26, se apercibió a los recurrentes que debían ir preparados para acreditar las gestiones realizadas para la preparación del Informe, más resulta que el Informe no fue presentado en la vista en su fondo. De modo que el Oficial Examinador les concedió hasta el 14 de octubre de 2024 para

radicar el mismo, apercibiéndoles expresamente sobre la posible desestimación por futuro incumplimiento. Posteriormente, el 16 de octubre del mismo año, se cuestionó a las partes sobre el incumplimiento con la orden, y se concedió el termino final de (5) días para presentar el Informe, apercibiéndoles nuevamente, de incumplir, se procedería a recomendar la desestimación. Así las cosas, el 22 de octubre de 2024, sin que hubiera transcurrido el término final de (5) días, el Oficial emitió *Orden* en la que dejó sin efecto el señalamiento de la vista en su fondo e indicó que recomendaría al Secretario la desestimación de las Querellas.

Es meritorio consignar que, aunque bien es cierto que el Oficial Examinador dejó sin efecto la vista en su fondo antes de que se cumpliese el término provisto para producir el Informe, la *Resolución* en la cual se recomendó al Secretario la desestimación de las Querellas se emitió el 16 de enero de 2026. En ese sentido, transcurrido el término de cinco (5) días, las partes no cumplieron con la orden reiterada de la agencia de producir el Informe, evidenciando así el patrón de incumplimiento. Por el contrario, se cruzaron de brazos, aun con los apercibimientos sobre las consecuencias de la recomendación al Secretario para desestimar.

De la totalidad del expediente notamos que no surge que las partes hayan sido diligentes en el cumplimiento con las órdenes ante la agencia administrativa. No presentaron el Informe, aun fuera del término que el Oficial Examinador les concedió para ello. Tampoco ofrecieron explicaciones razonables sobre las gestiones realizadas. Sí surge que las partes reiteraron su intención de proseguir con las Querellas, y consignaron en varias mociones controversias relacionadas al descubrimiento de prueba. Aunque esto último no justifica su incumplimiento en radicar dentro del término ordenado el Informe en conjunto o sus respectivas porciones en detrimento de un acuerdo, no pasa por desapercibido que el Oficial Examinador procedió con la recomendación de la desestimación de

las Querellas, así acogida por el Secretario, sin recurrir a la imposición de sanción económica según la normativa vigente, contemplada por el mismo Reglamento 9321, *supra*.

Luego de analizar los criterios de imposición de sanciones y desestimación antes esbozados, nos parece que este era el último método definitivo para alertar a la parte de la inminente desestimación.[20] Ante el incumplimiento de la parte recurrente y ante las advertencias dadas por el Oficial Examinador anunciándoles que se recomendaría la desestimación, correspondía que la agencia cumpliera con la norma por nuestro ordenamiento y su propio reglamento. Esto es, la orden para mostrar causa y la imposición de sanciones económicas previo a **la sanción de desestimación**, la cual debe utilizarse como **último recurso**.

Ante esa realidad, aunque en el caso ante nos se evidencia el incumplimiento procesal por parte de los recurrentes sobre la producción del Informe de Conferencia, el que persistió pese a múltiples órdenes y apercibimientos, debemos establecer que la desestimación, como sanción máxima, debió estar precedida de, al menos, sanciones económicas de conformidad con nuestro estado de derecho. Al actuar de otra forma y recurrir a la desestimación sin previa sanción, el Departamento de Salud obvió e incumplió irrazonablemente su propio reglamento.

-IV-

Por los fundamentos antes esbozados, se revoca la determinación recurrida. Se devuelve el caso a la agencia administrativa para que señale vista en su fondo y proceda con la imposición de sanciones según la normativa antes expuesta.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[20] *Véase*, Sección 3.21 de la LPAU; Reglas 28 y 39 del Reglamento 9321, *supra*.